**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 23-1571**

─────────────

BETHNEY NICOLE LOVO; HUMBERTO LOVO,

        Plaintiffs - Appellants,

v.

LOREN MILLER, Nebraska Service Center Director, U.S. Citizenship and Immigration Services; UR MENDOZA JADDOU, Director, U.S. Citizenship and Immigration Services,

        Defendants - Appellees.

─────────────

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Elizabeth K. Dillon, District Judge.  (5:22−cv−00067−EKD)

─────────────

Argued:  January 25, 2024                         Decided:  July 3, 2024

─────────────

Before DIAZ, Chief Judge, and NIEMEYER and WYNN, Circuit Judges.

─────────────

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Niemeyer joined.  Chief Judge Diaz wrote an opinion dissenting in part and in the judgment.

─────────────

**ARGUED:**  Charles H. Seidell, MCDERMOTT WILL & EMERY LLP, Washington, D.C., for Appellants.  James J. Wen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**  Benjamin Osorio, MURRAY OSORIO PLLC, Fairfax, Virginia; Paul W. Hughes, MCDERMOTT WILL & EMERY LLP, Washington, D.C., for Appellants.  Brian M. Boynton, Principal Deputy Assistant Attorney General, William C. Peachey, Director, William C. Silvis, Assistant Director, Cara E. Alsterberg, Senior Litigation Counsel, Eric C. Steinhart, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.;

Christopher R. Kavanaugh, United States Attorney, Laura Taylor, Deputy United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellees.

WYNN, Circuit Judge:

Plaintiffs—an American citizen and her noncitizen husband—brought this suit against two U.S. Citizenship and Immigration Services ("USCIS") officials, claiming that USCIS has unreasonably delayed adjudicating a waiver application the husband submitted to USCIS two years ago.[1] Both before the district court and on appeal, Plaintiffs have asserted that the Administrative Procedure Act ("APA") and the Mandamus Act grant subject-matter jurisdiction over their claims.

The district court rejected that assertion and dismissed their claims, concluding that language in the Immigration and Nationality Act ("INA") that denies courts jurisdiction over suits based on agency "decisions or actions" also bars suits over agency *in*action. That was error. But we nonetheless affirm because no statute or regulation requires USCIS to adjudicate the husband's waiver application, and the district court therefore lacked jurisdiction over Plaintiffs' claims.

I.

A.

Under the INA, noncitizens who are married to United States citizens can apply for lawful-permanent-resident status—colloquially known as receiving a "green card." *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(2). Typically, that process requires that a noncitizen

---

[1] In line with Supreme Court practice, "[t]his opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

Since Plaintiffs sued the two defendants in their official capacities, we refer to the defendants collectively as "USCIS."

first be the beneficiary of an approved immigrant petition, such as a Form I-130. *See generally* 8 U.S.C. §§ 1153(a)(2), 1154 (describing petition process); 8 C.F.R. §§ 204.1(a)(1), 204.2(a) (regulations requiring Form I-130). If USCIS approves a Form I-130 or similar petition, the noncitizen may then take the next step in applying for adjustment of status.

Some noncitizens may apply for adjustment of status from within the United States. *See* 8 U.S.C. § 1255. But others—such as noncitizens who are unlawfully present in the United States—cannot. *See id.* (limiting eligibility to apply for adjustment of status); 8 C.F.R. § 245.1 (same). Instead, before this second group of noncitizens can obtain lawful-permanent-resident status, they must exit the country and apply for an immigrant visa. *See* 8 U.S.C. § 1202(a) ("Every alien applying for an immigrant visa and for alien registration shall make application therefor in such form and manner and at such place as shall be by regulations prescribed."); 22 C.F.R. § 42.62(a)–(b) (describing requirement to appear and have eligibility assessed by a consular officer); *id.* § 41.81(b)(1) (requiring that "[t]he consular officer is satisfied that the alien is qualified [as a nonimmigrant spouse] and the consular officer has received a petition approved by the [Department of Homeland Security] . . . that was filed by the U.S. citizen spouse of the alien in the United States").

But that requirement creates a conundrum. If a noncitizen has been unlawfully present in the United States for more than one year and leaves the country voluntarily—such as when they leave to apply for a visa—they are ineligible to receive a visa for ten years. *See* 8 U.S.C. § 1182(a)(9)(B)(i); 22 C.F.R. § 40.92(b). So, such a noncitizen, upon

4

leaving the country to apply for a visa as part of the process for seeking lawful-permanent-resident status, will find themselves barred from the country for a decade.

That said, noncitizens are not always required to wait the full ten years. The Secretary of Homeland Security ("the Secretary")—acting through USCIS—may waive a noncitizen's unlawful presence and thereby do away with the ten-year ban. *See* 8 U.S.C. § 1182(a)(9)(B)(v).[2] But, until 2013, noncitizens had to leave the country to apply for a waiver and "remain abroad until USCIS adjudicate[d their] waiver" application and they reapplied for a visa. Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536, 565 (2013). In addition, even if an applicant satisfied the statutory eligibility criteria, USCIS retained discretion whether to ultimately approve or deny any unlawful presence waiver application. 8 U.S.C. § 1182(a)(9)(B)(v). Collectively, these requirements meant that a noncitizen who was married to a United States citizen, had spent nearly their entire life in the United States, and had built a career and family here had to face enormous uncertainty and the pain of potential long-term separation from their family members if they sought to take the steps legally required to obtain lawful-permanent-resident status.

The government apparently recognized that many noncitizens might rationally avoid those risks and opt not to seek lawful-permanent-resident status. So, in 2013, the

---

[2] As drafted, the statute refers to the Attorney General's authority. But Congress has since assigned authority for enforcement of immigration laws to the Secretary of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, § 402, 116 Stat. 2135, 2178 (2002). And the Secretary has delegated to USCIS authority over the provisions relevant here. *See* 6 U.S.C. § 275(a); 8 C.F.R. § 212.7(e)(1).

Department of Homeland Security attempted to resolve the dilemma. It did so by promulgating regulations that permit some noncitizens to apply for a provisional unlawful presence waiver without leaving the United States. *See* 8 C.F.R. § 212.7(e); Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. at 536.

Provisional unlawful presence waiver applications ("Provisional Waiver Applications") are submitted to and adjudicated by USCIS using Form I-601A. *See* 8 C.F.R. § 212.7(e); Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. at 536. If USCIS grants the provisional waiver, it automatically becomes effective when the noncitizen leaves the United States and appears at a United States embassy or consulate, so long as the State Department determines that the noncitizen is otherwise eligible for an immigrant visa. 8 C.F.R. § 212.7(e)(12)(i). Once effective, the waiver permits the noncitizen to receive an immigrant visa without the mandatory waiting period. *Id.* § 212.7(e)(12)(ii). The noncitizen then gains lawful-permanent-resident status after they seek to reenter the United States and are admitted by a Department of Homeland Security officer.[3] *See* 8 U.S.C. § 1255(a) (setting requirements for adjustment of status, including admissibility); *id.* § 1201(h) (stating that an erroneous grant of a visa does not waive inadmissibility); *see also* Consular Processing,

_____

[3] While lawful-permanent-resident status accrues upon entry to the United States, the physical green card is subsequently provided after a processing fee is paid. *See* Implementation of Immigrant Visa DHS Domestic Processing Fee, 77 Fed. Reg. 74490–91 (2012).

https://www.uscis.gov/green-card/green-card-processes-and-procedures/consular-processing [https://perma.cc/XU5Z-3DYT] (last updated July 20, 2023) (discussing consular processing).

This new system alleviated many of the problems with the prior unlawful presence waiver application process. But it is not without its flaws. Only a few years ago, USCIS processed most Provisional Waiver Applications in less than four months. *See Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year, Fiscal Year 2013 to 2018 (up to September 30, 2018)*, https://egov.uscis.gov/processing-times/historic-pt-2 [https://perma.cc/93F7-3BSX] (last visited Mar. 3, 2024) (noting a median processing time of 3.0 months in 2015).[4] Now, however, it takes more than three-and-a-half *years* to resolve most applications. *See Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms By Fiscal Year, Fiscal Year 2019 to 2024 (up to January 31, 2024)*, https://egov.uscis.gov/processing-times/historic-pt [https://perma.cc/C524-AS2N] (last visited Feb. 29, 2024) (noting a current median processing time of 42.4 months). That growth in wait times has motivated numerous recent lawsuits, including this one.

## B.

Humberto Lovo ("Mr. Lovo") is a native and citizen of El Salvador who has lived in the United States continuously since he was six years old and is a Deferred Action for

---

[4] "[W]e may take judicial notice of governmental reports." *United States v. Doe*, 962 F.3d 139, 147 n.6 (4th Cir. 2020).

Childhood Arrivals ("DACA") recipient. Bethney Nicole Lovo is an American citizen. The two have been married for over a decade and have two children together.

DACA permits Mr. Lovo to receive forbearance of removal, work authorization, and various federal benefits. *See generally Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 11 (2020). But it does not grant permanent status. 8 C.F.R. § 236.23(a)(4) (requiring renewal every two years). And without permanent status, Mr. Lovo cannot advance his career through employment with the federal government, *see* 5 C.F.R. § 7.3 (limiting competitive service positions to individuals who are citizens or nationals of the United States), cannot freely travel outside the United States, *see* 8 C.F.R. § 236.22(b)(2) ("[U]nauthorized travel outside of the United States on or after August 15, 2012, will interrupt continuous residence[.]"), and must worry about whether future executive action will curtail his ability to live in the United States.

In 2018, Plaintiffs started the process of applying for lawful-permanent-resident status for Mr. Lovo by submitting to USCIS a Form I-130. USCIS approved that form, permitting Plaintiffs to proceed with the process of obtaining a visa for Mr. Lovo (the next step toward lawful-permanent-resident status).

However, because he does not qualify as lawfully present, Mr. Lovo would be barred from returning to the United States for ten years if he left the country in order to apply for a visa. He therefore applied for a provisional unlawful presence waiver, and USCIS received his Provisional Waiver Application on April 11, 2022.

After spending more than ten months waiting for a decision, Plaintiffs filed this lawsuit in March 2023. In their amended complaint, they brought one claim for relief

pursuant to the APA and another claim seeking a writ of mandamus, alleging that USCIS had unreasonably delayed in adjudicating the application and seeking an order requiring USCIS to do so in a timely fashion. While they sought to require USCIS to adjudicate Mr. Lovo's application, Plaintiffs did not demand that it reach a specific outcome from the adjudication process. In other words, Plaintiffs sought only to receive an answer, one way or the other, from USCIS.

USCIS moved pursuant to Rule 12(b)(1) to dismiss Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction and pursuant to Rule 12(b)(6) to dismiss for failure to state a claim.

After briefing, the district court dismissed the case for lack of subject-matter jurisdiction, finding that 8 U.S.C. § 1182(a)(9)(B)(v)'s bar on judicial review of a "decision or action" regarding an unlawful presence waiver applied to Plaintiffs' claims, reasoning that USCIS's *in*action fell within the meaning of the term "action." *Lovo v. Miller*, No. 5:22-CV-00067, 2023 WL 3550167, at *3 (W.D. Va. May 18, 2023). Plaintiffs timely appealed.

## II.

When a district court dismisses a complaint pursuant to Rule 12(b)(1), we review its legal conclusions de novo. *Polfliet v. Cuccinelli*, 955 F.3d 377, 380 (4th Cir. 2020). Conducting that review here, we conclude that the district court applied an erroneous reading of the INA's jurisdictional bar, but that it nonetheless lacked subject matter jurisdiction over the case because the decision whether to adjudicate Plaintiffs' application was committed to USCIS's discretion.

9

The APA establishes a "basic presumption of judicial review" of agency action.[5] *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993) (internal quotation marks and citation omitted). And, under the APA's judicial-review provisions, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; *see also id.* § 704 (permitting review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court"). When a court reviews agency action under the APA, it "shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

Courts may not, however, exercise jurisdiction over an APA claim if the claim falls under an exception to the APA's judicial-review provisions. *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) (affirming decision to dismiss a subset of claims for lack of subject-matter jurisdiction because claims did not satisfy the portion of the APA judicial-review provisions embodied in 5 U.S.C. § 701(a)(2)).

The APA provides two such exceptions: one for when "statutes preclude judicial review" and the other for when "agency action is committed to agency discretion by law."

---

[5] The APA itself "is not a jurisdiction-conferring statute." *Lee v. U.S. Citizenship & Immigr. Servs.*, 592 F.3d 612, 619 (4th Cir. 2010) (quoting *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006)). But it operates in conjunction with 28 U.S.C. § 1331 to provide courts with jurisdiction to review agency action. *See* 28 U.S.C. § 1331 (conferring jurisdiction over federal questions); *Califano v. Sanders*, 430 U.S. 99, 105 (1977) (recognizing that 28 U.S.C. § 1331 "confer[s] jurisdiction on federal courts to review agency action"); *Bowen v. Massachusetts*, 487 U.S. 879, 891 n. 16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331.").

5 U.S.C. §§ 701(a)(1)–(2). USCIS argues that an explicit jurisdictional bar in the INA applies to this case and, regardless, that the decision whether to adjudicate Provisional Waiver Applications is committed to its discretion by law. So, we must decide "whether the INA precludes review of [Plaintiffs'] claim under the APA," *Lee*, 592 F.3d at 619, through either an explicit jurisdictional bar or by committing the relevant agency action to USCIS's discretion. If either exception applies, the district court correctly determined that it lacked subject-matter jurisdiction over Plaintiffs' claims. While the first exception does not apply, the second exception does, and we therefore affirm.

A.

We first assess the issue that the district court found dispositive: whether 8 U.S.C. § 1182(a)(9)(B)(v) bars review of inaction or delay in adjudicating Provisional Waiver Applications.[6]

When determining whether a statute deprives us of jurisdiction, we apply the "well-settled and strong presumption [that] when a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (internal quotation marks and citations omitted). "The presumption can only be overcome by 'clear and

---

[6] The Illegal Immigration Reform and Immigration Responsibility Act of 1996 amended the INA to add the jurisdiction-stripping provisions in 8 U.S.C. § 1182(a)(9)(B)(v) and 8 U.S.C. § 1252(a)(2)(B). *See* Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-577, 3009-607. Throughout, we refer to these provisions as part of the INA.

11

convincing evidence' of congressional intent to preclude judicial review." *Id.* (quoting

*Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)).

With that presumption in mind, we start with the relevant text. The portion of the

INA that permits provisional unlawful presence waivers states that

> [t]he [Secretary] has sole discretion to waive [an applicant's disqualifying unlawful presence] in the case of an immigrant who is the spouse . . . of a United States citizen . . . if it is established to the satisfaction of the [Secretary] that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. *No court shall have jurisdiction to review a decision or action by the [Secretary] regarding a waiver under this clause.*

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added).[7]

The parties agree that § 1182(a)(9)(B)(v) bars review of USCIS's ultimate *decision*

on the waiver application. *See* Opening Br. at 39; Response Br. at 24. But they dispute

whether the statute's reference to "decision or action" also bars review of the agency's

inaction or delay.

The INA does not define either "action" or "decision." *See* 8 U.S.C. § 1101. So, we

must look elsewhere to determine whether the plain meaning of "decision or action" under

the INA includes inaction or delay. *Matson v. Alarcon*, 651 F.3d 404, 408 (4th Cir. 2011)

---

[7] Another INA provision bars review of "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). That provision effectively reiterates the requirements imposed by 5 U.S.C. §§ 701(a)(1)–(2). Accordingly, we do not separately analyze that provision. *Cf. Gonzalez*, 985 F.3d at 367 n.4 (recognizing that § 1252(a)(2)(B)(ii) may "reinforce" a holding based on a lack of jurisdiction pursuant to the APA's judicial-review provisions but declining to analyze the provision separately).

12

(stating that "[w]hen the terms at issue are not defined in the statute, we apply their plain and ordinary meaning," with careful consideration to "the context in which they are employed").

We begin that inquiry with the text itself. *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 288–89 (4th Cir. 1998). In doing so, "[w]e customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning." *Id.* at 289; *accord Davidson v. United Auto Credit Corp.*, 65 F.4th 124, 129 (4th Cir. 2023) ("Searching for the plain meaning of a statute's text often starts with reading dictionaries published close in time to when it was enacted.").

When the statute was enacted in 1996, Black's Law Dictionary defined "decision" as "[a] determination arrived at after consideration of facts, and, in legal context, law." *Decision*, *Black's Law Dictionary* (6th ed. 1991). Webster's Dictionary similarly defined "decision" as "the act or process of deciding" or "a determination arrived at after consideration." *Decision*, *Webster's Third New International Dictionary* (1993). And Black's Law Dictionary defined "action" as "conduct; behavior; something done[,]" *Action*, *Black's Law Dictionary* (6th ed. 1991), while Webster's Dictionary variously defined it as "a deliberative or authorized proceeding," "the process of doing," and "a thing done," *Action*, *Webster's Third New International Dictionary* (1993). Those definitions each point to some affirmative conduct, not mere inaction or delay. And they align with the intuition that the definition of a word like "action" would not typically include its logical opposite. *Cf. Murphy v. F.D.I.C.*, 38 F.3d 1490, 1501 (9th Cir. 1994) (refusing to read the term "assets" to include "liabilities" because the words "are antonyms, not

13

equivalents"). So, while dictionary definitions are not always dispositive, here, they strongly indicate that neither delay nor inaction falls within the ordinary definition of "decision or action."

Context could of course warrant departing from a term's dictionary definition. But the context in which the phrase "decision or action" appears in the INA does not sway us to disturb the ordinary definition. USCIS primarily argues against using the ordinary definitions of "action" and "decision" by suggesting that "action" in § 1182(a)(9)(B)(v) has the same definition that "agency action" has under the APA. It is true that the APA defines "[a]gency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act*." 5 U.S.C. § 551(13) (emphasis added). If the INA incorporated the APA's definition of "agency action" into its own definition of "action," then § 1182(a)(9)(B)(v) would undoubtedly bar review of Plaintiffs' claims. But "[t]he term '[agency ]action' as used in the APA is a term of art," *Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013), and there is no indication that Congress incorporated that bespoke definition into the INA generally or into its jurisdictional bars specifically.

In fact, Congress's decision to explicitly include the "failure to act" within the APA's definition of agency action suggests Congress did *not* believe that inaction fell within the ordinary definition of "action" as used in other statutes. And the APA's legislative history suggests that this special definition was included to resolve the specific problem that review of agency indecision would not be covered by the statute if the ordinary definition of "action" applied. *See* S. Rep. No. 79-752, at 12 (1945) (stating that

14

the "agency action" definition was intended to "assure the complete coverage of every form of agency power, proceeding, action, or inaction"); *accord* H.R. Rep. No. 79-1980, at 21 (1946) (similar).

Because Congress crafted the APA's defined terms for a specialized purpose, we have held that "when Congress [has] wanted to incorporate APA definitions into [other statutes], it d[oes] so expressly." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 200 (4th Cir. 2013); *accord* 5 U.S.C. § 551 (stating that the APA's definitions apply "[f]or the purpose of this subchapter"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." (quoting 2A Norman Singer, Statutes and Statutory Construction § 46:06, at 194 (6th rev. ed. 2000))). Even though the INA's jurisdictional bar at issue here was enacted after the APA, and the APA therefore provides a backdrop against which Congress enacted the jurisdictional bar, Congress elected neither to explicitly incorporate the APA's definition, nor to use the term "agency action" in the jurisdictional bar. Therefore, Congress provided no indication that it intended to eschew the ordinary definition of "action" in favor of the specialty definition of "agency action" utilized in a different statute.

Nor is the case law particularly helpful for our task. In both the context of this specific provision of the INA and other INA provisions, courts are deeply divided on

15

whether to adopt the dictionary definitions of "decision" and "action"[8] or the definition

proposed by USCIS.[9] Given the divided nature of the answers to this question, we decline

---

[8] *E.g.*, *Bamba v. Jaddou*, No. 1:23-CV-357, 2023 WL 5839593 (E.D. Va. Aug. 18, 2023) (finding 8 U.S.C. § 1182(a)(9)(B)(v) does not bar review of agency delay or indecision); *Torres Guevera v. Miller*, No. 1:23-CV-397-MSN-WEF, 2024 WL 83504 (E.D. Va. Jan. 8, 2024) (same); *Estrada v. Miller*, No. 1:23-CV-402-MSN-LRV, 2024 WL 98151 (E.D. Va. Jan. 8, 2024) (same); *Escobar v. Miller*, No. 1:23-CV-399-MSN-WEF, 2024 WL 98393 (E.D. Va. Jan. 8, 2024) (same); *Granados v. United States*, No. 23-CV-250-MEH, 2023 WL 5831515 (D. Colo. Aug. 23, 2023) (same); *Lara-Esperanza v. Mayorkas*, No. 23-CV-01415-NYW-MEH, 2023 WL 7003418 (D. Colo. Oct. 24, 2023) (same); *Saavedra Estrada v. Mayorkas*, No. 23-2110, 2023 WL 8096897 (E.D. Pa. Nov. 21, 2023) (same); *Segovia v. Garland*, No. 1:23-CV-1478-AT, 2024 WL 1223481 (N.D. Ga. Mar. 21, 2024) (same); *Novack v. Miller*, No. 23-CV-10635-AK, 2024 WL 1346430 (D. Mass. Mar. 29, 2024) (same); *Chen v. Mayorkas*, No. 23-CV-1357, 2024 WL 2846911 (E.D.N.Y. June 5, 2024) (same); *see also Iddir v. Immigr. & Naturalization Serv.*, 301 F.3d 492, 496–98 (7th Cir. 2002) (holding that a failure to timely adjudicate is neither a "judgment" nor a "decision or action" within the meaning of 8 U.S.C. § 1252(a)(2)(B)); *Liu v. Novak*, 509 F. Supp. 2d 1, 5–7 (D.D.C. 2007) (collecting decisions on either side of the divide from cases not involving § 1182(a)(9)(B)(v) and concluding that the plain meaning of "action" does not include "inaction").

[9] *E.g.*, *Soni v. Jaddou*, 103 F.4th 1271 (7th Cir. 2024) (reaching the same conclusion as the district court here); *Lopez Real v. U.S. Citizenship & Immigr. Servs.*, No. 23 C 14684, 2024 WL 764474 (N.D. Ill. Feb. 9, 2024) (same); *Carrillo v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-06298, 2024 WL 2722696 (N.D. Ill. May 28, 2024) (same); *Singh v. Mayorkas*, No. 3:23-CV-00527, 2024 WL 420124 (M.D. Tenn. Feb. 5, 2024) (same), *appeal docketed*, No. 24-5260 (6th Cir. Mar. 21, 2024); *Beltran v. Miller*, No. 4:23CV3053, 2023 WL 6958622 (D. Neb. Oct. 20, 2023) (same); *Reyes Silva v. Miller*, No. 4:23CV3038, 2023 WL 7042347 (D. Neb. Oct. 26, 2023) (same); *Grajales Cortes v. Miller*, No. 4:23CV3073, 2023 WL 9500788 (D. Neb. Oct. 20, 2023) (same); *Solorio v. Miller*, No. 4:23CV3071, 2023 WL 9501176 (D. Neb. Nov. 1, 2023) (same); *Ybarra v. Miller*, No. 4:23CV3082, 2023 WL 7323365 (D. Neb. Nov. 7, 2023) (same), *appeal docketed*, No. 23-3520 (8th Cir. Nov. 15, 2023); *Macias v. Miller*, No. 4:23CV3078, 2023 WL 8253203 (D. Neb. Nov. 13, 2023) (same); *Cisneros v. Miller*, No. 4:23CV3074, 2023 WL 9500782 (D. Neb. Nov. 14, 2023) (same); *Hernandez v. Miller*, No. 4:23CV3084, 2023 WL 9501175 (D. Neb. Nov. 15, 2023) (same); *Sanchez v. U.S. Citizenship & Immigr. Servs.*, No. 4:23CV3102, 2023 WL 9500875 (D. Neb. Nov. 16, 2023) (same); *Mercado v. Miller*, No. 2:22-cv-02182-JAD-EJY, 2023 WL 4406292 (D. Nev. July 7, 2023) (same), *appeal docketed*, No. 23-16007 (9th Cir. July 17, 2023); *Echeverri v. U.S. Citizenship &*

16

to stray from the usual meaning of "action" merely because some courts have been persuaded by USCIS's interpretation.

Nor do we find persuasive USCIS's argument that the Supreme Court's decision in *Patel v. Garland* requires us to abandon the ordinary definition of "action." Mirroring the reasoning on which the district court based its decision, USCIS argues that "action" includes "inaction" because the Supreme Court's decision in *Patel v. Garland* requires a

---

*Immigr. Servs.*, No. 23-CV-21711-RAR, 2023 WL 5350810 (S.D. Fla. Aug. 21, 2023) (same); *Mafundu v. Mayorkas*, No. 23-CV-60611-RAR, 2023 WL 5036142 (S.D. Fla. Aug. 8, 2023) (same); *Mashiach v. Mayorkas*, No. 23-60692-CIV, 2023 WL 9787581 (S.D. Fla. Nov. 27, 2023) (same); *Tetelain v. Jaddou*, No. 23-60742-CIV, 2023 WL 9787562 (S.D. Fla. Nov. 27, 2023) (same); *Morales Sanchez v. Garland*, No. 23-60701-CIV, 2024 WL 762474 (S.D. Fla. Jan. 12, 2024) (same); *De Lima v. United States*, No. 23-60793-CIV, 2024 WL 762475 (S.D. Fla. Jan. 12, 2024) (same); *Vijay v. Garland*, No. 2:23-CV-157-SPC-KCD, 2023 WL 6064326 (M.D. Fla. Sept. 18, 2023) (same); *Calisto v. Sec'y Homeland Sec.*, No. 6:23-CV-422-WWB-DCI, 2024 WL 473694 (M.D. Fla. Jan. 22, 2024) (same); *Singh v. Jaddou*, No. 1:23-CV-00254, 2023 WL 8359889 (M.D. Pa. Dec. 1, 2023) (same); *Juarez v. Mayorkas*, No. CV 23-00463-BAJ-SDJ, 2024 WL 497150 (M.D. La. Feb. 8, 2024) (same), *appeal docketed*, No. 24-30188 (5th Cir. Mar. 27, 2024); *Candido v. Miller*, No. 23-CV-11196-DJC, 2024 WL 710660 (D. Mass. Feb. 21, 2024) (same); *Arciba v. Garland*, No. 4:23-CV-00611-P, 2024 WL 1337875 (N.D. Tex. Mar. 28, 2024) (same); *Muniz v. Miller*, No. 23-CV-11075-DJC, 2024 WL 624827 (D. Mass. Feb. 14, 2024) (applying the same interpretation of § 1182(a)(9)(B)(v) as the district court here but stating in dicta that USCIS has a nondiscretionary duty to adjudicate all Provisional Waiver Applications); *Soto v. Miller*, No. 1:23-CV-03016-EFS, 2023 WL 8850747 (E.D. Wash. Dec. 21, 2023) (same); *Valencia Gonzalez v. Moran*, No. 1:23-CV-3166-EFS, 2024 WL 1181885 (E.D. Wash. Mar. 19, 2024) (same); *see also Cheejati v. Blinken*, 97 F.4th 988, 993 (5th Cir. 2024) (holding that "the pace at which" USCIS adjudicates applications qualifies as an "action" within the meaning of 8 U.S.C. § 1252(a)(2)(B)(ii)).

We recognize that the only other circuit to address this issue with respect to § 1182(a)(9)(B)(v) interpreted the provision to bar judicial review. *See Soni*, 103 F.4th at 1271. However, the Seventh Circuit's decision in that case failed to address any of the reasoning on which we rely, and instead summarily concluded that "[n]o review means no review[.]" *Id.* Needless to say, we find that paper-thin rationale unpersuasive.

17

broad reading of jurisdictional bars in the INA. *See Patel v. Garland*, 596 U.S. 328 (2022). But that reading of *Patel* is badly mistaken.

In *Patel*, the petitioner challenged an Immigration Judge's denial of his application for adjustment of status, primarily arguing that the Immigration Judge erred in assessing his credibility as a witness. *Id.* at 337–38. The relevant jurisdictional limitation in that case, 8 U.S.C. § 1252(a)(2)(B)(i), bars review of questions of fact that relate to "any judgment regarding the granting of relief,"[10] so the petitioner argued that the credibility assessment was not a "judgment" for the purposes of the statute. The Supreme Court disagreed, holding that the term "*any* judgment *regarding* the granting of relief" demands a broad interpretation that includes not only a final yes-or-no decision on an application for adjustment of status, but also other determinations, such as ones made regarding credibility, that support an Immigration Judge's ultimate decision. *Patel*, 596 U.S. at 338; *see id.* at 338–41.

The district court here stated—and USCIS reiterates—that *Patel* instructs a broad reading of § 1182(a)(9)(B)(v)'s language such that "action" encompasses inaction or delay. *See Lovo*, 2023 WL 3550167, at *3. In doing so, both USCIS and the district court read more into *Patel* than the decision can bear. The effect of the Supreme Court's broad construction was to decide that the "judgment" referred to in § 1252(a)(2)(B)(i) includes "any authoritative decision" rather than only a "discretionary" or "last-in-time judgment."

---

[10] That jurisdictional bar only applies to decisions under 8 U.S.C. §§ 1182(h), 1182(i), 1229b, 1229c, and 1255, and therefore is not relevant here. *See* 8 U.S.C. § 1252(a)(2)(B)(i).

*Patel*, 596 U.S. at 337–38. Devoid of context, each of the definitions between which the Supreme Court chose at least plausibly fit the definition of a "judgment." Here, by contrast, USCIS and the district court would have us apply a definition of "action" that encompasses its logical opposite even though none of the ordinary definitions discussed above support that meaning. Because *Patel* neither applied a reading so broad that it flipped the meaning of a word on its head nor instructed us to do so, we decline to adopt such a strange interpretation.

Finally, USCIS argues that behind its inaction and delay are hidden policy choices about how to allocate resources, so what seems to outsiders like agency inaction really constitutes some affirmative action. But that ignores that § 1182(a)(9)(B)(v) refers to "a decision or action . . . regarding *a* waiver," not high-level policy choices regarding all waivers. 8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). Since any policy decision USCIS makes—whether about Provisional Waiver Applications or not—could have some downstream impact on the resources available to review Provisional Waiver Applications, the logic of USCIS's reading could bar review of agency actions or inactions far afield from Provisional Waiver Applications. In other words, under USCIS's theory, 8 U.S.C. § 1182(a)(9)(B)(v) could operate to deprive courts of jurisdiction to review almost any USCIS action. In light of the actual text of § 1182(a)(9)(B)(v), which precludes only judicial review of "a decision or action . . . regarding *a* waiver," we are confident that Congress did not intend that result.

In sum, because the ordinary definition of "decision or action" does not include inaction or delay, and because Congress provided no indication that it intended a special

19

definition to apply in § 1182(a)(9)(B)(v), the district court erred by finding that provision bars review of Plaintiffs' claim.

B.

However, even without an explicit jurisdictional bar, the APA does not permit judicial review of a challenge to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). A claim for agency action unlawfully withheld or unreasonably delayed "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "[W]here an agency is not required to do something, we cannot compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366 (emphasis omitted). We therefore must decide whether the INA or its enacting regulations require USCIS to adjudicate Mr. Lovo's Provisional Waiver Application. Because we conclude neither do, we affirm.

While we typically apply a presumption in favor of judicial review when we assess a specific jurisdiction-stripping provision, an analogous presumption does not apply when we determine whether an action is committed to agency discretion by law. Rather, we will only hold that an agency is mandated to act—and therefore that its failure to act is subject to judicial review—if there is a "clear indication of binding commitment" imposed on the agency. *Norton*, 542 U.S. at 69. To hold otherwise would transform a presumption in favor of judicial review into a presumption in favor of mandating agency action. So, "[j]ust like the traditional mandamus remedy from which [5 U.S.C. § 706(1)] is derived, claims to compel agency action are limited to enforcement of a specific, *unequivocal* command, over

20

which an official has no discretion." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 432 (4th Cir. 2019) (internal quotation marks omitted and emphasis added).

To assess whether an agency is bound to act, we first look to the text of the relevant statutes and regulations. Our decision in *Gonzalez v. Cuccinelli* provides useful guidance for when language in those sources is sufficiently clear for us to conclude that an agency is mandated to act. *See Gonzalez*, 985 F.3d at 371. In *Gonzalez*, we were asked to decide whether federal courts had subject-matter jurisdiction to review USCIS's delays adjudicating 1) applications for work authorization pending U-Visa approval, and 2) U-Visa petitions. The statute addressing work authorization did not mandate adjudication, *see* 8 U.S.C. § 1184(p)(6), and the relevant regulation stated that "USCIS, *in its discretion*, *may authorize* employment for . . . petitioners and qualifying family members," 8 C.F.R. § 214.14(d)(2) (emphasis added). So, we held that the language in neither the statute nor the regulation was sufficient to mandate USCIS to act regarding work authorization, and its failure to act was therefore unreviewable. *Gonzalez*, 985 F.3d at 366–71.

In contrast, the relevant regulations for the U-Visa petitions provided that "[i]f USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS *will* approve [the U-Visa application]," 8 C.F.R. § 214.14(c)(5)(i) (emphasis added)), and that "[a]ll eligible petitioners who, due solely to [a statutory cap on the number of U-Visas], are not granted U-1 nonimmigrant status *must* be placed on a waiting list," *id.* § 214.14(d)(2) (emphasis added)). Those uses of mandatory language provided no room for agency discretion and therefore established that USCIS "committed itself by regulation to" adjudicate the petitions and to "place eligible applicants on the [U-Visa] waiting list."

21

*Gonzalez*, 985 F.3d at 374 n.10. Since USCIS had so bound itself, its failure to timely adjudicate U-Visa petitions was reviewable. *Id.*

As illustrated by our conclusion in *Gonzalez*, the presence of "unmistakably mandatory" language, such as the word "will," can provide sufficient evidence of the unequivocal command required for us to hold that an agency is compelled to act. *Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993) (quoting *Hewitt v. Helms*, 459 U.S. 460, 471 (1983)). Likewise, explicit references to an agency's discretion, or even to discretionary language, such as the term "may," are "generally construed as permissive rather than mandatory[.]" *United Hosp. Ctr., Inc. v. Richardson*, 757 F.2d 1445, 1453 (4th Cir. 1985). However, the impact of seemingly mandatory or permissive language depends heavily on the context in which it appears. *See id.* (stating that "the construction of" mandatory or permissive language "is reached in every case 'on the context of the statute [or regulation], and on whether it is fairly to be presumed that it was the intention of the legislature [or agency] to confer a discretionary power or to impose an imperative duty'" (alterations in original) (quoting *Thompson v. Clifford*, 408 F.2d 154, 158 (D.C. Cir. 1968))); *Norton*, 542 U.S. at 69 (holding that references in a conservation plan to what an agency "will" do were not mandatory without additional indicia of a binding commitment).

In this case, the parties agree that the statutory provisions of the INA do not require USCIS to adjudicate Provisional Waiver Applications. *E.g.*, Opening Br. at 31 ("USCIS's obligation to adjudicate waiver requests originates in regulation rather than statute."); Response Br. at 16 ("The statute does not require adjudication at all."); *accord* 28 U.S.C.

§ 1182(a)(9)(B)(v) (referring to USCIS's "sole discretion"). But they disagree regarding whether USCIS's regulations impose such a requirement.

A regulation can mandate action even if a statute does not. *See Gonzalez*, 985 F.3d at 374 n.10 (recognizing that an agency can be bound to act by its regulations); *Norton*, 542 U.S. at 65 (recognizing that "[t]he limitation to required agency action . . . includes, of course, agency regulations that have the force of law" (emphasis omitted)); *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990) ("It is a familiar rule of administrative law that an agency must abide by its own regulations."). So, we must evaluate whether the regulations implementing § 1182(a)(9)(B)(v) mandate USCIS to adjudicate Provisional Waiver Applications.[11]

The Secretary has enacted regulations that govern provisional unlawful presence waivers, *see* 8 C.F.R. § 212.7(e), three of which are relevant for determining whether USCIS is required to adjudicate Provisional Waiver Applications. First, 8 C.F.R. § 212.7(e)(1) delegates to USCIS "exclusive jurisdiction to grant a provisional unlawful presence waiver[.]" 8 C.F.R. § 212.7(e)(1). Next, § 212.7(e)(2)(i) provides that "USCIS *may* adjudicate applications for a provisional unlawful presence waiver of inadmissibility

---

[11] The dissenting opinion cites *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289 (2001), to suggest that the mere fact that USCIS enacted regulations permitting Provisional Waiver Applications means that it bound itself to adjudicate the applications. Not so. For one, *St. Cyr* was based on the "uniqueness of habeas" review and therefore "is inapplicable here." *Gonzalez*, 985 F.3d at 370. Further, *Norton* makes clear that we must look to whether a statute or its implementing regulations *require* agency action—not merely whether implementing regulations exist. *See Norton*, 542 U.S. at 69; *Gonzalez*, 985 F.3d at 369 ("Despite the presence of statutes and regulations mandating agency action and a land use plan discussing future actions, the Court in *Norton* found that the agency retained broad discretion to act.").

23

based on [§ 1182(a)(9)(B)(v)] filed by eligible aliens described in paragraph (e)(3) of this section." *Id.* § 212.7(e)(2)(i) (emphasis added). Finally—and most important for Plaintiffs' argument—§ 212.7(e)(8) provides that "USCIS *will* adjudicate a provisional unlawful presence waiver application in accordance with this paragraph and [§ 1182(a)(9)(B)(v)]." *Id.* § 212.7(e)(8) (emphasis added).

Plaintiffs argue that § 212.7(e)(8) imposes on USCIS a "nondiscretionary duty to adjudicate" Provisional Waiver Applications. Opening Br. at 31. We disagree.

There is only one way to read these regulations as part of a harmonious scheme. As explained below, that reading requires us to conclude that 1) § 212.7(e)(1) grants USCIS jurisdiction to adjudicate Provisional Waiver Applications; 2) § 212.7(e)(2)(i) provides that whether to adjudicate the Provisional Waiver Applications at all is left to USCIS's discretion; and 3) § 212.7(e)(8) requires that *when*, *in its discretion*, USCIS decides to adjudicate claims, it must do so in accordance with the standards and procedures laid out in the statute and regulations. Plaintiffs' alternative interpretation of § 212.7(e)(8) would have us ignore important regulatory text and render at least one of the other relevant provisions surplusage.

We recognize that if read in isolation, the use of the word "will" in § 212.7(e)(8) could be understood to provide the requisite unequivocal command to adjudicate. But while the provision starts by stating that "USCIS will adjudicate a provisional unlawful presence waiver application," it does not end there. Instead, it continues on to say that "USCIS will adjudicate a provisional unlawful presence waiver application *in accordance with this paragraph and [§ 1182(a)(9)(B)(v)]*." 8 C.F.R. § 212.7(e)(8) (emphasis added). And the

24

conclusion of that sentence suggests that the provision merely instructs that any adjudication must conform with other statutory and regulatory requirements, such as the requirement later in § 212.7(e)(8) that "if USCIS determines in its discretion that a waiver is not warranted, USCIS will deny the waiver application" and the requirement in § 212.7(e)(7) that sets out the standard of proof for adjudicating Provisional Waiver Applications. 8 C.F.R. §§ 212.7(e)(7)–(8). So, § 212.7(e)(8) does not unequivocally require USCIS to adjudicate the Provisional Waiver Applications, even before we consider whether Plaintiffs' proposed reading conflicts with other provisions of the regulation.

Moreover, "we must read the regulation's words—just like a statute's—'in their context and with a view to their place in the overall [regulatory] scheme.'" *Mohamed v. Bank of Am. N.A.*, 93 F.4th 205, 211 (4th Cir. 2024) (alteration in original) (quoting *Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017)). As an extension of that principle, we endeavor to avoid interpretations of one provision that would render other provisions surplusage. *See United States v. Briley*, 770 F.3d 267, 273 (4th Cir. 2014). Reading § 212.7(e) as a whole, we conclude there is no way to provide § 212.7(e)(8) the broader reading that Plaintiffs advance without either unnecessarily rendering § 212.7(e)(1) or § 212.7(e)(2)(i) surplusage or manifesting a direct conflict between the provisions.

Specifically, the statement in § 212.7(e)(2)(i) that USCIS "*may* adjudicate" Provisional Waiver Applications offers a clear indication that USCIS is not *mandated* to do so. 8 C.F.R. § 212.7(e)(2)(i) (emphasis added). Under Plaintiffs' proposed reading, therefore, § 212.7(e)(2)(i) would directly conflict with § 212.7(e)(8).

25

Plaintiffs have failed to offer an alternative interpretation of § 212.7(e)(2)(i) that could convincingly reconcile all the relevant provisions. Nor can we imagine such an interpretation. For example, it might be possible to read § 212.7(e)(2)(i) as a grant of jurisdiction to adjudicate and § 212.7(e)(8) as a subsequent mandate to utilize that jurisdiction. But because the Secretary already provided USCIS with jurisdiction through § 212.7(e)(1), that interpretation would only shift the problem by rendering a different provision surplusage. So, interpreting § 212.7(e)(8) to mandate USCIS to adjudicate Provisional Waiver Applications would require us to read out of the regulation either § 212.7(e)(1) or § 212.7(e)(2)(i). Because there is a straightforward, commonsensical way to read all three provisions harmoniously, and no textual reason not to do so, we must follow that reading.

The dissenting opinion points to a fourth regulation, 8 C.F.R § 212.7(e)(9), to argue that USCIS bound itself to adjudicate Provisional Waiver Applications. But that argument fails for the same reasons as does Plaintiffs' argument about § 212.7(e)(8). Section 212.7(e)(9) provides that "USCIS will notify" a noncitizen that has submitted a Provisional Waiver Application "of the decision in accordance with 8 CFR 103.2(b)(19)." 8 C.F.R. § 212.7(e)(9). The dissenting opinion is correct to recognize that language mandating notification of an agency's ultimate decision can create a requirement to adjudicate. *See* Dis. Op. at 41. But it does not do so where, as here, the agency enacts regulations that preserve its discretion over whether to adjudicate. Absent the permissive language in § 212.7(e)(2), the mandatory language in § 212.7(e)(9)—like the mandatory language in § 212.7(e)(8)—might well convince us that USCIS bound itself to adjudicate Provisional

26

Waiver Applications. But the permissive language in § 212.7(e)(2) colors our interpretation of the later regulations. Just as we can read § 212.7(e)(2) in harmony with § 212.7(e)(8), we can also read it in harmony with § 212.7(e)(9) by understanding the notification requirement as kicking in only once USCIS decides to adjudicate a Provisional Waiver Application. And because that commonsensical approach again accords with the text and avoids reading out part of the regulations, we must do so.

Plaintiffs suggest that we should also consider the regulations "[a]t most . . . ambiguous" and look to other context to determine whether USCIS must adjudicate Mr. Lovo's Provisional Waiver Application. Reply Br. at 21–22. But we are not convinced.

To be sure, some contextual clues support Plaintiffs' position. First, USCIS regulations require applicants to pay a fee of $630 to "fil[e] an application for provisional unlawful presence waiver." 8 C.F.R. § 106.2(a)(25) (setting fee); 8 C.F.R. § 212.7(e)(5)(i) (requiring payment). When the Department of Homeland Security enacted a rule that increased the required fee, it stated that it was "adjust[ing] the fee for Form I-601A to reflect the estimated full cost of adjudication."[12] U.S. Citizenship and Immigration Services

---

[12] The rule change sought to increase the fee from $630 to $960. USIC Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 85 Fed. Reg. at 46,791. But that change did not go into effect because of a preliminary injunction. *See Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 83 (D.D.C. 2020). An updated rule, effective April 1, 2024, sets the fee at $795. *See* U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 89 Fed. Reg. 6194, 6324, 6388 (2024). In enacting the updated rule, USCIS stated that it had changed a series of fees "to fully recover costs and maintain adequate service." *Id.* at 6194. However, not all fees are set to recover full cost of their related services, *see, e.g., id.* at 6325 ("[T]he fees for Forms G-1041 and G-1041A will not recover their full cost, but other USCIS fees will offset their cost."), and

27

Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 85 Fed. Reg. 46,788, 46,850 (2020). And the instructions for the application itself indicate that "[w]hen you send a payment, you agree to pay for a government service." I601A, Application for Provisional Unlawful Presence Waiver (Jan. 30, 2024), https://www.uscis.gov/i-601a [https://perma.cc/W5U3-QMKL] (emphasis omitted); *see also* Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. at 549 ("USCIS uses these fees to process applicants['] benefit requests and to cover its administrative costs.").

Second, in the preamble to the final provisional unlawful presence waiver regulations, USCIS provided its own summary of the "Problems Addressed by the Rule." Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. at 565. In that summary, USCIS stated that "[t]he final rule will permit certain immediate relatives to apply for a provisional unlawful presence waiver prior to departing from the United States. USCIS *will* adjudicate the provisional unlawful presence waiver[.]" *Id.* (emphasis added).

This contextual evidence certainly suggests that USCIS intends or desires to adjudicate the Provisional Waiver Applications. And if we lacked any reasonable way to reconcile the text of § 212.7(e)(2)(i) and § 212.7(e)(8), then the additional contextual clues to which Plaintiffs point would be useful for choosing which of the two provisions to give

USCIS did not state whether the updated fee for filing Form I-601A would cover the full cost of adjudication.

28

effect. But none of the additional context pushes us to abandon the sole reading that gives effect to both.

To start, it is a significant logical leap to conclude that USCIS bound itself to adjudicate because it required applicants to pay the full cost of adjudication up front or stated that the fees fund adjudication. At most, the required payment might show that USCIS must *either* adjudicate or return the applicant's fee, *not* that an applicant can compel USCIS to adjudicate their application. Indeed, USCIS's regulations contemplate refunding application fees in at least some situations where it would not adjudicate a Provisional Waiver Application. *E.g.*, 8 C.F.R. § 212.7(e)(5)(ii) (stating that "[a]n application for a provisional unlawful presence waiver will be rejected and the fee and package returned" if, for example, the applicant fails to sign their application or provide supporting evidence required to adjudicate the application). And if USCIS retained an applicant's fee but either explicitly or effectively refused to adjudicate their application, the applicant would likely have a cause of action related to refunding the fee. *See, e.g.*, *Astakhov v. U.S. Citizenship & Immigr. Servs.*, No. CV 23-1502 (JEB), 2023 WL 6479080, at *6–7 (D.D.C. Oct. 5, 2023) (discussing how applicants for immigration benefits might bring illegal exaction claims against the United States pursuant to the Tucker Act if USCIS unlawfully collects fees); 28 U.S.C. § 1346(a) (providing district courts with jurisdiction over certain Tucker Act claims). Therefore, while an applicant might have a claim against USCIS if the agency collects an application fee but refuses to adjudicate the application, it does not follow that the claim permits an applicant to force USCIS to adjudicate when its regulations otherwise make that decision discretionary.

29

Similarly, USCIS's cursory summary of the "Problems Addressed by the Rule" in the regulation's preamble does not justify discarding one of the regulations. That summary would be valuable if we thought the regulations read as a whole were ambiguous, but it does not resolve the fundamental issue that Plaintiffs' proposed interpretation is irreconcilable with the promulgated text. *See Mejia-Velasquez v. Garland*, 26 F.4th 193, 202 (4th Cir. 2022) ("[T]o the extent there is a conflict between the preamble and the regulation, the regulation must control because a preamble cannot be read to require more than the regulation requires."); *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) (recognizing that "language in the preamble of a regulation is not controlling over the language of the regulation itself" but that courts often look to "the preamble to a regulation [as] evidence of an agency's contemporaneous understanding of its proposed rules"); *Peabody Twentymile Mining, LLC v. Sec'y of Lab.*, 931 F.3d 992, 998 (10th Cir. 2019) ("[W]hile the preamble can inform the interpretation of the regulation, it is not binding and cannot be read to conflict with the language of the regulation itself.").

So, while context is vital to understanding the meaning of text, none of the context here resolves the key conflict Plaintiffs' reading of the regulations creates or convinces us that there is an "unequivocal command" requiring USCIS to adjudicate Provisional Waiver Applications.

Plaintiffs last argue that § 212.7(e) must mandate adjudication because "Congress did not, sub silentio, endow USCIS with the authority to unilaterally impose a de facto moratorium on all applications." Reply Br. at 19–20 (cleaned up). But Plaintiffs have already conceded that Congress did not mandate adjudication when it passed the INA and

30

instead base their argument solely on the regulations in § 212.7(e). *See* Opening Br. at 31 ("USCIS's obligation to adjudicate waiver requests originates in regulation rather than statute."). They have therefore effectively conceded that, at a minimum, USCIS could amend the regulations to omit the language on which Plaintiffs base their argument and then impose a de facto moratorium. *Cf. Gonzalez*, 985 F.3d at 367 (discussing how Congress for years had not required the Secretary to enact regulations implementing the U-Visa program, the Secretary therefore opted not to implement the program at all, and Congress eventually intervened to mandate implementation).

In short, the text of § 212.7(e) compels us to conclude that even though the provisional unlawful presence waiver program was established with the goal of easing the visa-application process, USCIS retains discretion under the regulations to decide if it will adjudicate an application at all. USCIS has made efforts to adjudicate Provisional Waiver Applications—albeit at a slower and slower rate. But because neither Congress nor USCIS itself has ever bound USCIS to adjudicate these applications, the federal courts lack jurisdiction to consider Plaintiffs' APA claim. Accordingly, we must affirm the judgment of the district court as to that claim.

## C.

In addition to agreeing that the district court lacked subject matter jurisdiction over Plaintiffs' APA claim, we also agree with the district court's determination that it lacked

31

subject-matter jurisdiction over Plaintiffs' request for mandamus relief.[13] *See* 28 U.S.C. § 1361. Similar to the APA, the Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act. *See Murray Energy Corp. v. Adm'r of Env't Prot. Agency*, 861 F.3d 529, 537 n.4 (4th Cir. 2017) (recognizing that § 1361 "only empower[s] a court to respond to an agency's failure to act in the face of a clear-cut duty"), *as amended* (July 18, 2017); *cf. City of New York*, 913 F.3d at 432 ("Just like the traditional mandamus remedy from which [the APA judicial review provisions] derive[], claims to compel agency action are limited to enforcement of a specific, unequivocal command, over which an official has no discretion." (internal quotation marks omitted)). Because, as discussed above, there was no clear duty to act, we also affirm the judgment of the district court as to Plaintiffs' claim for mandamus relief.

## III.

Our role in determining whether and when Plaintiffs receive an answer on Mr. Lovo's Provisional Waiver Application is narrowly circumscribed. Because federal courts may not order an agency to act when neither statute nor regulation provides a basis for doing so, we lack the authority to provide Plaintiffs the relief they seek.

In so concluding, we in no way mean to downplay the anguish Plaintiffs must be enduring while they wait for USCIS to adjudicate Mr. Lovo's application. Receiving the provisional unlawful presence waiver for which Plaintiffs have applied would no doubt be

---

[13] USCIS has argued that Plaintiffs' claim to jurisdiction under the Mandamus Act was forfeited on appeal. Response Br. at 32. Because we would affirm even if the issue was not forfeited, we decline to address whether the issue was forfeited.

life-changing, and USCIS's prolonged delay in adjudicating Mr. Lovo's Provisional Waiver Application is sure to be incredibly stressful. Nor do we seek to justify USCIS's years-long delays in processing applications that it previously processed in a matter of months. But Plaintiffs' complaint must be addressed to the political branches. Because we lack jurisdiction to order the relief Plaintiffs seek, we affirm the judgment of the district court.

*AFFIRMED*

DIAZ, Chief Judge, dissenting in part and in the judgment:

I.

Humberto Lovo has dreamed of permanent residence in this country for decades. Five years ago, U.S. Citizenship and Immigration Services ("USCIS") approved an immediate-relative petition filed by Lovo's U.S. citizen wife on his behalf. But Lovo was never lawfully admitted at a port of entry, so he couldn't adjust his status from within the United States.

Instead, Lovo had two options. He could wait outside the country for ten years for his period of inadmissibility to pass. Or he could apply for a provisional unlawful presence waiver, which would allow him to obtain permanent residence without spending the mandatory ten-year period abroad.

To remain with his wife and their U.S. citizen children, Lovo reasonably chose the latter option. In April 2022, he filed his waiver application and paid USCIS the $630 application fee. But more than two years later, USCIS has yet to act on that application — and its current processing time for waiver applications is more than 3.5 years. In the interim, the Lovo family must remain in limbo while they await Mr. Lovo's fate.

Like many waiver applicants, the Lovos sued USCIS to compel it to adjudicate Mr. Lovo's waiver application. The district court held that the Immigration and Nationality Act deprived it of subject matter jurisdiction over the suit and dismissed it. I agree with the majority that the district court was wrong. But USCIS can't simply decide not to

34

*adjudicate* Lovo's application *at all*. Because the majority holds otherwise, I respectfully dissent.

## II.

Section 706 of the Administrative Procedure Act provides a cause of action to compel "agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But § 706 has "inherent limits." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021).

Indeed, a § 706 claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "Just like the traditional mandamus remedy from which this provision is derived, claims to compel agency action are limited to enforcement of a specific, unequivocal command, over which an official has no discretion." *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 432 (4th Cir. 2019) (cleaned up). If an agency isn't required to do something, "we cannot compel the agency to act—let alone to act faster." *Gonzalez*, 985 F.3d at 366 (citing *Norton*, 542 U.S. at 63 n.1).

An agency may be made to act not just when Congress has ordered it to by statute, but also when the agency has "committed itself [to do so] by regulation." *Id.* at 370; *cf. Elec. Components Corp. of N.C. v. NLRB*, 546 F.2d 1088, 1090 (4th Cir. 1976) ("It is well settled that the rules and regulations of an administrative agency are binding upon it as well as upon the citizen even when the administrative action under review is discretionary in nature.").

35

That's true even if the agency retains discretion over the decision: If it has bound itself to render *some* decision, a plaintiff has a valid cause of action if the agency fails to do so within a reasonable time.

## A.

Our decision in *Gonzalez* illustrates this point.    There, we reviewed a challenge to USCIS's delays in adjudicating immigration applications. *Gonzalez*, 985 F.3d at 360–61. The plaintiffs had applied for U-Visas,[1] and they had also applied to receive work authorization while their U-Visa applications were pending. *Id.* at 364.  They argued that USCIS had "unreasonably delayed" adjudications of both applications. *Id.* at 365.

We held that the district court had no jurisdiction over the plaintiffs' claims for work authorization because USCIS retained discretion over whether to adjudicate the work authorization applications at all. *See id.* at 366–71.  For context, Congress had passed an amendment to the Immigration and Nationality Act that stated, "The Secretary *may* grant work authorization to any alien who has a pending, bona fide application" for a U-Visa.  8 U.S.C. § 1184(p)(6) (emphasis added).  But even though that amendment permitted USCIS to grant work authorization to U-Visa applicants, the agency had discretion over whether

---

[1] A U-Visa is a form of nonimmigrant status granted to eligible noncitizens "who are victims of serious crime and who cooperate with law enforcement."  *Gonzalez*, 985 F.3d at 361.  But "Congress capped the number of U-Visas at 10,000 per year," *id.*, and USCIS regularly receives more applications than the cap.  So USCIS promulgated regulations that created a "waiting list" for applicants whose applications it approved, but who couldn't immediately receive a U-Visa because of the statutory cap. *Id.*  USCIS grants work authorization to U-Visa applicants after placing them on the waiting list. *Id.*

to issue regulations implementing that statute. *See, e.g.*, *Gonzalez*, 985 F.3d at 366. And it chose not to. *Id.* at 364.

The plaintiffs argued that Congress's "grant of discretionary authority, combined with eligibility standards (i.e., 'pending, bona fide application'), required the agency to make a decision." *Id.* at 366 (cleaned up). But we found that even if eligibility standards could compel the agency to act, "there [were] no policies or regulations to direct the agency's action," *id.* at 369, nor anything more than a "broad standard[]" in the statute, *id.* at 370 (cleaned up).

We contrasted that circumstance with *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), where the Supreme Court held that habeas jurisdiction encompassed review of the agency's failure to "adjudicate a particular benefit request even though procedures and standards for evaluating such requests existed and had historically been employed." *Gonzalez*, 985 F.3d at 370 (citing *St. Cyr*, 533 U.S. at 301–09).

In *St. Cyr*, the habeas petitioner was a permanent resident who had pleaded guilty to a criminal offense that made him deportable. 533 U.S. at 293. After his plea, but before the commencement of his removal proceedings, Congress passed two statutes that repealed the Attorney General's ability to grant suspension of deportation, a form of discretionary relief, to permanent residents convicted of aggravated felonies, as St. Cyr was. *Id.*

St. Cyr argued that the lower court could exercise habeas jurisdiction to determine whether that repeal applied retroactively. *See id.* The Supreme Court agreed, *id.* at 314, noting there must be a "clear statement of congressional intent to repeal habeas jurisdiction," *id.* at 317.

37

We said in *Gonzalez* that *St. Cyr* "discussed habeas corpus jurisdiction for immigration proceedings and is best limited to those issues." 985 F.3d at 370. But we then distinguished *St. Cyr* on the ground that the statute there had regulations and "defined procedures" for adjudication, unlike the work authorization statute at issue in *Gonzalez*. *Id.* So while *St. Cyr* isn't directly on point, we interpreted it in *Gonzalez* as holding that an agency has a duty to adjudicate when it has established procedures for doing so.

But in *Gonzalez*, "there [were] no regulations or defined procedures, much less longstanding ones, for evaluating pre-waiting-list work authorizations." *Id.* Thus, the "pending, bona fide" language in the statute, standing alone, didn't "transform the discretionary 'may' into a mandatory 'shall.'" *Id.* at 371. "The decision to adjudicate remain[ed] discretionary," *id.*, so the plaintiffs' claim wasn't justiciable.

On the other hand, the plaintiffs *could* challenge USCIS's delay in adjudicating their U-Visa applications. *Id.* at 374 n.10. That's because, unlike with the work authorization statute, "the agency ha[d] committed itself by regulation to place eligible applicants on the waiting list." *Id.* That regulatory commitment created a duty for USCIS to adjudicate applications. *See id.* So we remanded the case for consideration of the plaintiffs' unreasonable delay claims. *Id.* at 374–76.

## B.

Although the majority holds otherwise, the provisional unlawful presence waiver application process is more like the U-Visa scheme, and less like the completely unimplemented work authorization scheme. In my view, then, USCIS has a duty to adjudicate Lovo's application.

38

Unlike the work authorization statute, USCIS has—in its discretion—promulgated a comprehensive regulatory regime governing the implementation and administration of the waiver. *See* 8 C.F.R. § 212.7(e).

The majority thinks that this regulatory scheme leaves USCIS with discretion over whether it adjudicates waiver applications at all. That's not right.

As the majority states, three regulations are relevant here. Maj. Op. at 23–24. It explains:

> First, 8 C.F.R. § 212.7(e)(1) delegates to USCIS "exclusive jurisdiction to grant a provisional unlawful presence waiver[.]" 8 C.F.R. § 212.7(e)(1). Next, § 212.7(e)(2)(i) provides that "USCIS *may* adjudicate applications for a provisional unlawful presence waiver of inadmissibility based on [§ 1182(a)(9)(B)(v)] filed by eligible aliens described in paragraph (e)(3) of this section." *Id.* § 212.7(e)(2)(i) (emphasis added). Finally—and most important for Plaintiffs' argument—§ 212.7(e)(8) provides that "USCIS *will* adjudicate a provisional unlawful presence waiver application in accordance with this paragraph and [§ 1182(a)(9)(B)(v)]." *Id.* § 212.7(e)(8) (emphasis added).

*Id.*

The majority reads § 212.7(e)(2) and § 212.7(e)(8) together to mean that "*[W]hen, in its discretion*, USCIS decides to adjudicate claims, it must do so in accordance with the standards and procedures laid out in the statute and regulations." Maj. Op. at 24.

Viewed in isolation, these provisions are susceptible to that reading. But given the broader regulatory context, I don't think the word "may" in § 212.7(e)(2) is the death knell the majority takes it to be. *See Mohamed v. Bank of Am. N.A.*, 93 F.4th 205, 211 (4th Cir. 2014) ("Of course, we must read the regulation's words—just like a statute's—in their context and with a view to their place in the overall regulatory scheme." (cleaned up)).

As the Supreme Court has stated, "may" can sometimes be "ambiguous." *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Though "the word may . . . normally confers a discretionary power, not a mandatory power . . . this rule is not inflexible, and there are situations where legislative intent indicates that the term 'may' should be interpreted as mandatory." *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 151 (4th Cir. 1993) (cleaned up).

For example, the government uses "may adjudicate" in regulations implementing *nondiscretionary* forms of relief, such as certificates of citizenship. *See* 8 C.F.R. § 341.5(a). Under 8 U.S.C. § 1452(a), people who derive U.S. citizenship through a parent may apply for a special document, called a certificate of citizenship, that confirms their citizenship. If the applicant is eligible, the government *must* issue the certificate. 8 U.S.C. § 1452(a) ("Upon proof to the satisfaction of the Attorney General that the applicant is a citizen, and that the applicant's alleged citizenship was derived as claimed . . . *such individual shall be furnished by the Attorney General with a certificate of citizenship*[.]" (emphasis added)). But the regulation implementing that law uses permissive language. 8 C.F.R. § 341.5(a) ("USCIS *may adjudicate* the application only after the appropriate approving official has reviewed the report, findings, recommendation, and endorsement of the USCIS officer assigned to adjudicate the application." (emphasis added)).

Another waiver regulation, 8 C.F.R. § 212.7(e)(9), informs my reading. It states that "USCIS *will* notify the alien and the alien's attorney of record or accredited representative of *the decision* in accordance with 8 C.F.R. § 103.2(b)(19)." 8 C.F.R. § 212.7(e)(9) (emphases added). USCIS repeats that language in its waiver application

instructions.    U.S. Citizenship & Immigr. Servs., *Instructions for Application for Provisional Unlawful Presence Waiver* 18, https://www.uscis.gov/sites/default/files/document/forms/i-601ainstr.pdf [https://perma.cc/P4EU-2AW7] (last visited June 13, 2024) ("USCIS *will* notify you of *our decision* in writing." (emphases added)).

Read in context then, once USCIS receives an application, it must render a decision, and it must notify the applicant and the applicant's attorney or accredited representative of "the decision."   *See* 8 C.F.R. § 212.7(e)(9).

Next, consider 8 C.F.R. § 245.2(a)(5)(i), which provides that an applicant for adjustment of status (another discretionary benefit) "shall be notified of the decision, and if the application is denied, of the reasons for the denial."[2]  A bevy of courts have held that the regulation's mandatory language imposes on USCIS "a non-discretionary, mandatory duty to act on Plaintiffs' applications." *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999); *accord Singh*, 470 F. Supp. 2d at 1067 n.6 (finding the same); *Burni v. Frazier*, 545 F. Supp. 2d 894, 904–06 (D. Minn. 2008) (same); *Linville v. Barrows*, 489 F. Supp. 2d 1278, 1281 (W.D. Okla. 2007) (same); *cf. Patel v. Cissna*, 400 F. Supp. 3d 1373, 1380

---

[2] Another regulation, 8 C.F.R. § 209.2(f), which applies to adjustment of status for asylees, contained identical language.  USCIS promulgated a new version, which provides, "USCIS will notify the applicant in writing of the decision on his or her application." *Id.* Courts have likewise interpreted § 209.2(f) to require USCIS to adjudicate the application. *See Singh v. Still*, 470 F. Supp. 2d 1064, 1067 & n.6 (N.D. Cal. 2007); *Zhu v. Chertoff*, 525 F. Supp. 2d 1098, 1100 (W.D. Mo. 2007); *Saini v. U.S. Citizenship & Immigr. Servs.*, 553 F. Supp. 2d 1170, 1175 (E.D. Cal. 2008).

(M.D. Ga. 2019) (finding no duty to adjudicate U-Visa work authorization applications and contrasting that with duty to adjudicate adjustment of status applications).

So too here. That USCIS "will notify" applicants of "the decision" creates a duty to rule on Lovo's application. If it were otherwise, why would § 212.7(e)(9) reference "*the decision*," and not "any decision" or "a decision"? We've recognized that "there is a fundamental difference between the definite and indefinite article." *United States v. McCauley*, 983 F.3d 690, 695 (4th Cir. 2020). I choose to take USCIS at its word that each application has a corresponding decision, one that USCIS must send to the applicant and, if applicable, his attorney.

Then there's the preamble, which says that "USCIS *will* adjudicate the provisional unlawful presence waiver." Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536, 565 (Jan. 3, 2013) (emphasis added). Of course, "to the extent there is a conflict between the preamble *and the regulation*, the regulation must control." *Mejia-Velasquez v. Garland*, 26 F.4th 193, 202 (4th Cir. 2022) (emphasis added). But here, because one regulation—§ 212.7(e)(2) —appears to conflict with other regulations, the language in the preamble may inform our interpretation. *Cf. Mejia-Velasquez*, 26 F.4th at 202 (acknowledging that while not binding, "'the preamble can inform the interpretation of the regulation'" (quoting *Peabody Twentymile Mining, LLC v. Sec'y of Lab.,* 931 F.3d 992, 998 (10th Cir. 2019)). *See also Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 53 (D.C. Cir. 1999) (noting that a "preamble to a regulation is evidence of an agency's contemporaneous understanding of its proposed rules" and "may serve as a source of evidence concerning contemporaneous agency

42

intent"); *City of Las Vegas v. Fed. Aviation Admin.*, 570 F.3d 1109, 1117 (9th Cir. 2009) ("When a regulation is ambiguous, we consult the preamble of the final rule as evidence of context or intent of the agency promulgating the regulations.").

Finally, that there's a streamlined application process itself is strong evidence that adjudication is mandatory. In *Gonzalez*, there was no such process for work authorization, as there was for the U-Visa application. 985 F.3d at 364. The applicants merely ticked a box on their U-Visa applications that they wished to obtain work permits. *Id.* They also tried to submit the general USCIS form used for work authorization applications, *id.*, but they couldn't properly complete it. Because USCIS never implemented the work authorization provision, it never provided a basis for work authorization that the U-Visa applicants could select on the form, nor did it set an application fee.[3] *See also Rodriguez v. Nielson*, No. 16-cv-7092, 2018 WL 4783977, at *9 (E.D.N.Y. Sept. 30, 2018) (noting that USCIS "has routinely rejected" U-Visa applicants' work authorization application forms because of the lack of "appropriate basis for [work authorization] eligibility").

---

[3] Almost every applicant for work authorization must submit Form I-765, Application for Employment Authorization. *See* U.S. Citizenship & Immigr. Servs., *I-765, Application for Employment Authorization*, https://www.uscis.gov/sites/default/files/document/forms/i-765.pdf [https://perma.cc/K7MH-L4CD] (last accessed June 11, 2024). The form requires the applicant to specify a two- or three-digit code, corresponding to the subsection in the relevant regulation that establishes his eligibility for work authorization. So, for example, a noncitizen granted asylum would designate (a)(5), corresponding to 8 C.F.R. § 274a.12(a)(5), on his Form I-765. A noncitizen granted deferred action, after being placed on the U-Visa waiting list, would designate (c)(14), corresponding to 8 C.F.R. § 274a.12(c)(14), on his Form I-765. But for U-Visa applicants, there's no such corresponding regulation, so the applicant can't complete Form I-765.

But for the provisional unlawful presence waiver, there's a detailed application process and clear standards for adjudication. An applicant must complete the required form and attach evidence of his eligibility for relief.[4] He must also provide biometrics. 8 C.F.R. § 212.7(e)(6). And crucially, he must pay a hefty fee.[5] 8 C.F.R. § 212.7(e)(5)(i); 8 C.F.R. § 106.2(a)(25).

It should be obvious that the fee is for "process[ing] applicants' benefit requests," 78 Fed. Reg. at 549, and adjudicating the application—*not* for the possibility that the application *may* be adjudicated. As USCIS states on its online application, "When you send a payment, you agree to pay for *a government service*. Filing and biometric services are final and nonrefundable."[6]

Indeed, it beggars belief that USCIS could receive the Lovos' application, deposit their check, do nothing for three years, and then return their check without adjudicating the application. USCIS doesn't suggest that it has ever, in its discretion, refused to adjudicate a waiver application. And though USCIS may return the application fee if the applicant fails to sign his application or provide supporting evidence, 8 C.F.R. § 212.7(e)(5)(ii), no regulation gives USCIS the authority to refund the fee for a properly filed waiver

---

[4] *See* U.S. Citizenship & Immigr. Servs., *I-601A, Application for Provisional Unlawful Presence Waiver*, https://www.uscis.gov/i-601a [https://perma.cc/7WQY-DJZJ] (last accessed June 13, 2024).

[5] USCIS recently increased the filing fee to $795. *See* 8 C.F.R. § 106.2(a)(34).

[6] *See* U.S. Citizenship & Immigr. Servs., *I-601A, Application for Provisional Unlawful Presence Waiver*, https://www.uscis.gov/i-601a [https://perma.cc/7WQY-DJZJ] (last accessed June 13, 2024) (emphasis added).

44

application once it has cashed the applicant's check, issued a receipt, and begun processing it.[7]

USCIS also tells applicants that the fee is "final and nonrefundable." *See* U.S. Citizenship & Immigr. Servs., *I-601A, Application for Provisional Unlawful Presence Waiver*, https://www.uscis.gov/i-601a [https://perma.cc/7WQY-DJZJ] (last accessed June 13, 2024) (emphasis added). That contradicts USCIS's litigating position that it will refund fees if it elects to simply not adjudicate an application. *See also Segovia v. Garland*, No. 1:23-cv-1478, 2024 WL 1223481, at *11 (N.D. Ga. Mar. 21, 2014) (recognizing that "the Government cannot charge a fee for the adjudication of an application and then argue that it has no duty to adjudicate a properly filed application" (cleaned up)).

Given all this, the majority's proposed solution—require the Lovos to hire an attorney, bring a Tucker Act suit to compel a refund, and pay still more filing fees—makes no sense. Nor does anything in the regulations require the Lovos to undertake this burdensome (and expensive) endeavor. Rather, when the Lovos paid USCIS to adjudicate

---

[7] USCIS recently amended its regulations, which now state: "Filing fees generally are non-refundable regardless of the outcome of the benefit request, or how much time the adjudication requires, and any decision to refund a fee is at the discretion of USCIS." 8 C.F.R. § 103.2(a)(1). But the preamble to this regulation suggests that USCIS will refund fees only in limited circumstances, such as "when [it] made an error which resulted in the application being filed inappropriately, or when an incorrect fee was collected." U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 89 Fed. Reg. 6194, 6321 (Jan. 31, 2024). As for applicants, "USCIS makes its no-refund policy clear on its website. Filing and biometric fees are final and non-refundable, regardless of any action USCIS takes on an application, petition, or request"—including, presumably, electing not to adjudicate it and returning it to the application—"or if requestors withdraw a request." *Id.* at 6276 (internal citations omitted).

45

Mr. Lovo's waiver application, they rightfully expected that USCIS would give them a decision *at some point*.

The Lovos might not prevail on their claim of undue delay.  But they are entitled to a ruling on the merits.  Because the majority holds otherwise, I respectfully dissent.